**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| ANDREAS TEARRI MORRIS, ) | |
| ID # 1580712, ) | |
|     Petitioner, ) | |
| vs. ) | No. 3:11-CV-3457-B (BH) |
| ) | |
| RICK THALER, Director, ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal ) | |
| Justice, Correctional Institutions Division, ) | |
|     Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order* 3-251, this case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant filings and applicable law, the habeas corpus petition should be **DENIED** with prejudice.

**I. BACKGROUND**

On December 7, 2011, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for murder in cause number 25,554 in Hunt County, Texas. Respondent is Rick Thaler, Director of TDCJ-CID.

**A.      Factual and Procedural History**

The State originally indicted petitioner on April 7, 2008, for the murder of Cordarien Kelly on or about July 1, 2007. (Clerk's Record "C.R.":34). On March 23, 2009, the State filed a motion to dismiss that case, Cause No. 24,927, because an insufficient number of witnesses appeared for trial. This motion was granted. (C.R.:71). On March 27, 2009, the State re-indicted petitioner in Cause No. 25,554 for the same offense. (C.R:7). He pleaded not guilty and was tried before a jury on June 8-11, 2009. (C.R.:5-6). On June 10, 2009, the jury convicted petitioner of murder as charged. (C.R.:5). After a punishment hearing, it sentenced him to life imprisonment. (C.R.:6).

On direct appeal, petitioner argued that: 1) the evidence was legally and factually insufficient to support his conviction; and 2) the sentence he received was disproportionate to the offense committed. Petitioner's conviction and sentence were affirmed on direct appeal, and his petition for discretionary review was refused. *Morris v. State*, No. 06-09-0171-CR, 2010 WL 1664023 (Tex. App.–Texarkana, April 27, 2010, pet. ref'd).

The state appellate court recounted the evidence presented at trial as follows:

> On the afternoon of July 1, 2007, Wendy Talley was at home on her front porch, from which she could see the driveway of the house next door. Talley saw Morris standing alone in the driveway that afternoon, smoking a Black and Mild. Talley had seen Morris in the neighborhood on previous occasions, and it was not unusual to see him that day. Talley knew Kelly, and saw him arrive on Wellington Street that afternoon with Michelle Spradling. Spradling parked her car in the driveway two houses down from Talley. Kelly walked over to the house next to Talley's-walking past Morris-who was still standing in the driveway. Kelly emerged from the house a few minutes later and was walking back to the car when Morris "opened up fire on him." Kelly's back was to Morris when Morris emptied his pistol; Morris continued to shoot after Kelly fell to the ground. After reloading his pistol, Morris fled the scene in his car, which had been parked on the side of the road.
>
> Later, Talley spoke with Detective Cole with the Greenville Police Department about the murder. At this meeting, Talley was able, in a photographic line-up, to identify Morris as the shooter. Talley also identified Morris in the courtroom as the individual who shot Kelly on the afternoon of July 1, 2007. Even though there were many people in the community who did not want her to testify, Talley was determined to do so because she is concerned about the safety of her neighborhood.
>
> \*   \*   \*
>
> Anthony Jones is a seventeen-year-old student at Greenville High School who spent time on Wellington Street in the summer of 2007. Jones grew up with Kelly, and the two ran track together. Jones also knows Morris, as Morris grew up with the Jones brothers.

2

As he was walking through a vacant lot between Polk and Wellington Streets on the afternoon of July 1, 2007, Jones heard gunshots. When Jones looked in the direction of the shots, he saw Morris shooting Kelly. Kelly was trying to run, but then fell to the ground. Jones saw Kelly and Morris before he heard the shots, when Kelly emerged from the third house on Wellington and walked at an angle toward the street. It looked as if Morris came out of the second house on Wellington. Both were walking toward the street and toward one another when Morris fired his gun. Kelly was between the two houses, close to the street, when he was shot. After having seen this, Jones hid behind some bushes; after about five minutes, he walked back home. At trial, Jones identified Morris as the shooter.

Jones did not report his knowledge of this event to the police until December of 2007, when he was arrested for possession of marijuana. At that time, Jones told law enforcement officer's what he knew about Kelly's murder. Jones did not come forward earlier because he wanted nothing to do with it, and denied that the district attorney's office "worked out a deal" for his testimony.

\* \* \*

On the afternoon of July 1, 2007, Xavier Jones was on Wellington Street visiting with Tristan Carter. Xavier and Carter were standing in the front yard when a car, driven by Spradling, pulled into the driveway. Kelly was in the passenger seat, and Spradling's children where in the back seat. When Kelly got out of the car, he and Xavier spoke briefly before Kelly walked to the house next door. Spradling remained in the car. Xavier saw Morris, as Kelly walked next door. It was neither unusual to see Morris "hanging out" on Wellington Street, nor unusual to see Kelly on Wellington Street. On this day, however, Xavier Jones saw Morris shoot Kelly. After he heard about two gunshots, Xavier ran through the house and into the woods behind the house, as more shots were being fired. Xavier returned to Wellington Street after the police arrived, but he was "too shocked" to talk to them.

Xavier had previously provided the police with a sworn statement indicating that he did not witness Kelly's murder. He denies having been promised anything in exchange for his testimony and admits that he lied to the police in the past and has been convicted of doing so.

\* \* \*

3

> Spradling's testimony did not identify Morris as the shooter, but adds to the narrative. On the day of his murder, Kelly called Spradling for a ride to Wellington Street. Spradling, along with her two young children seated in the back seat of the car, met Kelly at a store and drove him to Wellington Street. Spradling parked in a driveway twenty to thirty feet from the house Kelly visited. While waiting for Kelly, Spradling got out of the car to visit with Xavier and Tristan Carter, who were standing under a nearby shade tree. Jones and Carter were also friends of Kelly.
>
> After three or four minutes, Kelly emerged from the house and began walking back to the car. When she saw Kelly, Spradling returned to the car. Once inside, Spradling heard a series of gunshots and saw one black male-the shooter. When she saw Kelly fall to the ground, Spradling immediately fled the scene. While Spradling later came forward to give a statement to the authorities, she could identify the shooter only as a black male.

*Morris*, slip op. at 2-3 (footnotes omitted).

On September 21, 2011, petitioner filed a state writ in which he essentially raised the same claims he raises in his federal petition. (State Habeas Transcript "S.H.Tr.":3-14). On November 9, 2011, the Texas Court of Criminal Appeals denied his state application on the merits without a written order. (*Id*. at cover).

**B.    Substantive Claims**

On December 1, 2011, petitioner filed his federal habeas petition ("Pet.") raising the following grounds for relief:

(1) the indictment was untimely (ground one);

(2) trial counsel was ineffective in several respects (ground two);

(3) a crime scene video admitted into evidence at trial was inflammatory (ground three); and

(4) the prosecutor committed misconduct by making several improper comments during closing statements that were detrimental to the defense (ground four).

4

(Pet. at 6-7). Respondent filed a response on April 17, 2012, and provided the state court records. Petitioner filed a reply brief on May 21, 2012.

## II. AEDPA STANDARD

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). The AEDPA standards set out in 28 U.S.C. § 2254(d) therefore apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must

5

issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.  UNTIMELY INDICTMENT

In his first ground for relief, petitioner asserts that the indictment in his case was untimely. In his state habeas application, petitioner asserted that the State had violated the Texas Code of Criminal Procedure by failing to indict him until eight months after he was arrested. (S.H.Tr.:15-16). In his reply brief, petitioner argues that his right to speedy trial was violated because he was incarcerated for eight months until he was indicted on April 7, 2008, the first indictment was dismissed almost one year later, and then he was re-indicted. He asserts that he was prejudiced by

6

this delay because one of the witnesses changed his story. (Reply at 2-5).

To the extent that petitioner complains that the State violated state law by failing to indict him before the grand jury term ended or within 180 days, whichever date is later, in violation of Texas Code of Criminal Procedure Article 32.01, "the sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (1985). In a habeas proceeding, this Court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). Therefore, petitioner is not entitled to relief on this claim.

As to petitioner's claim in his reply brief that his right to a speedy trial was violated, this claim is unexhausted because it was not raised in his state writ application. He does not assert that there has been an absence of available State court process that prevented the exhaustion of this claim in state court. *See* 28 U.S.C. § 2254(b)(1). Even considering this unexhausted claim as permitted under § 2254(a)(2), it fails. In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court set forth four factors courts must balance when determining whether the constitutional right to a speedy trial under the Sixth Amendment has been violated: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) prejudice to the defendant. *Id*. at 530. To some extent, the length of delay acts as a triggering mechanism whereby a presumptively prejudicial delay would require a court to examine the other factors. *Id*. The delay that can be tolerated for a serious, complex charge is greater than that for an "ordinary street crime", and a deliberate attempt by the prosecution to delay a trial in order to hamper the defense should be weighed heavily against the government. *Id.* at 531. The failure of a defendant to assert his speedy trial right will make it

difficult for him to prove that he was denied his right to a speedy trial. As for prejudice, the speedy trial right is designed to prevent oppressive pre-trial incarceration, minimize anxiety and concern, and limit the possibility that the defense will be impaired. *Id.* at 532. The Fifth Circuit has held that, generally speaking, a delay of one year triggers a speedy trial analysis under *Barker*. *See United States v. Lucien*, 61 F.3d 366, 372 (5th Cir. 1995); *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993). The right to a speedy trial attaches when a person is arrested, indicted, or otherwise charged. *Doggett v. United States*, 505 U.S. 647, 655 (1992).

Here, the record reflects that: (1) petitioner was first arrested and incarcerated in early August of 2007; (2) he was appointed counsel on August 14, 2007; (3) he filed *pro se* applications for writ of habeas corpus seeking either release or that bond be set on November 30, 2007, January 30, 2008, and March 25, 2008; (4) appointed counsel filed an application for writ of habeas corpus seeking either release or an examining trial on February 19, 2008; (5) petitioner was first indicted on April 7, 2008; (6) new counsel was appointed on April 18, 2008; (7) the State filed a motion to dismiss the indictment on March 23, 2009, and it was granted by the trial court because most of the witnesses it had subpoenaed to testify at petitioner's trial had not appeared for trial that same day and because it had denied a motion to delay jury selection; (8) petitioner was re-indicted on March 27, 2009, and he was rearrested on April 2, 2009; and (9) trial began on June 8, 2009. (C.R.:5-9,19-36, 71).

Because petitioner was incarcerated on the murder charge for over one year before he was tried and convicted, a speedy trial analysis under *Barker* is warranted. While there is evidence that petitioner filed pleadings prior to his indictment seeking release or bond, he did not assert his right to a speedy trial. Even if these pleadings were considered assertions of this right, the remaining

8

factors do not weigh in petitioner's favor. After petitioner was first indicted, he did not raise any concern with the amount of time that passed before trial. After defense counsel filed several pretrial motions in April of 2008, and petitioner appeared in court several times, the trial court granted a joint continuance motion on October 22, 2008, and trial was set for February of 2009. (C.R.:17). In February of 2009, trial was re-set for March 19, 2009, when petitioner rejected a plea offer. (C.R.:17). Much of the time that passed between indictment and the dismissal of the indictment one year later was at either petitioner's request or with his acquiescence. The State then sought to dismiss the first indictment because few of the needed witnesses appeared for trial. Once petitioner was re-indicted, he was tried less than three months later. The record reflects that the reasons for the delay of trial were reasonable ones and that there was no deliberate attempt by the State to hamper the defense.

Finally, petitioner has shown no prejudice. The Sixth Amendment right to a speedy trial is concerned with three types of prejudice: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility that the defendant's defense will be impaired. *Doggett*, 505 U.S. at 654. Petitioner asserts that he has been prejudiced because one of the witnesses at trial, Xavier Jones, changed his story about what occurred. However, Xavier Jones was not the State's sole, or even primary, witness to the shooting. During closing statements, the State conceded that Xavier Jones had credibility problems because he was incarcerated on a felony at the time of his trial and because he had changed his story. It maintained that even if the jurors chose not to believe him because he had lied previously, the State had still met its burden based on the testimony of two other witnesses. (R. 3:73-74). Petitioner has not alleged that he was prejudiced by oppressive pretrial incarceration or anxiety and concern, and given the seriousness of the charge against him

9

and the fact that some of the delay was at the defense's request or with its acquiescence, he cannot establish that he was so prejudiced. Weighing the *Barker* factors, petitioner has failed to meet his burden of establishing that his right to speedy trial was violated, and this ground for relief should therefore be denied. *See United States v. Serna-Villareal*, 352 F.3d 225, 231-32 (5th Cir. 2003) (holding that the defendant had not shown a violation of his right to a speedy trial as a result of a three-year and nine-month delay where the defendant alleged that the delay deprived him of the opportunity to serve two sentences concurrently and allowed the government to charge him with a new offense). This ground for relief should be denied.

## IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner claims generally in his second ground for relief that counsel failed to object during trial on several occasions and failed to file motions favorable to the defense. (Pet. at 7). In his state habeas application, petitioner explained that counsel was ineffective for failing to: (1) object to a hypothetical given by the prosecutor during voir dire; (2) object to the prosecutor omitting "by shooting him with a firearm" as one of the elements when discussing the charged crime during voir dire; (3) object to personal opinion and misstatements of the evidence made by the prosecutor during opening statements; (4) object to personal opinion, misstatements of the evidence, vouching for the credibility of a witness made by the prosecutor during closing statements; (5) file a motion for change of venue due to pretrial publicity; and (6) file a motion for mistrial after the prosecutor commented on petitioner's failure to testify during closing statements. (S.H.Tr.:17-26).

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the

effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

### A.    **Failure to Object**

Petitioner asserts that trial counsel was for failing to object at several points during his trial. With regard to the failure to object to statements made by the prosecutor during the voir dire process and opening and closing statements, no error is discernable in the prosecutor's statements,

11

hypotheticals, or summary of the evidence. Conclusory allegations are insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). Even if the prosecutor had committed error, petitioner has failed to establish any prejudice. After the guilt phase of the trial, the jury was correctly instructed with regard to the law, including the State's burden and the presumption of evidence, the elements of the crime, the defendant's right not to testify, and the jury's role as the exclusive judge of the facts, including the weight and credibility given to witnesses. (C.R.:92-94). Petitioner has failed to establish that counsel was ineffective for failure to object.

**B.     Failure to File Motions**

Petitioner has also failed to establish that counsel was ineffective for failing to file certain motions. Petitioner first asserts that counsel failed to file a motion to change venue due to pretrial publicity. Under Texas law, a change may be granted in a criminal case upon the written motion of the defendant, supported by his own and at least two other affidavits from credible persons who are residents of the county, that there exists in that county so great a prejudice against the defendant that he cannot obtain a fair and impartial trial. The trial court shall determine the truth and sufficiency of the affidavits. TEX. CODE CRIM. PROC. ANN. art. 31.03(a) (Vernon 1979).

In a criminal trial, it is not necessary that jurors be totally ignorant of the facts and issues involved, but rather, that they be able to set aside any impressions or opinions they may have and render a verdict based upon evidence presented in court. *Murray v. Florida*, 421 U.S. 794, 798-800 (1978); *Irvin v. Dowd*, 366 U.S. 717, 722-3 (1961). Petitioner points to the record, which reflects that of the seventy-five people in the voir dire, twelve had read newspaper articles about the crime, and a few had formed opinions about the case. (S.H.Tr.:24). Petitioner also asserts that because others in the jury pool knew some of the government witnesses and the prosecuting attorney, and

because he was placed in segregated housing at the jail due to threats against him from the community, counsel was ineffective for failing to request a change of venue. He has presented no evidence, in affidavit form or otherwise, that there existed a prejudice against him in Hunt County such that he did not receive a fair and impartial trial, however. The record reflects that the members of the jury who stated that they had formed a firm opinion about the case were excused for cause, as was a veniremember who knew the victim. (R. 1:87-89). He has not shown that the fact that he was placed in segregation or that government witnesses were known to jurors prevented him from obtaining a fair and impartial trial. Because petitioner has presented no evidence in support of a motion for change of venue, he has failed to show both that his attorney was ineffective for failing to file such a motion and that there is a reasonable probability that such a motion would have been granted. Accordingly, counsel was not ineffective for failing to file a motion for change of venue.

Finally, petitioner also contends that counsel was ineffective for failing to file a motion for mistrial when the prosecutor stated during her closing argument that "[t]he defendant deserves to be found guilty, because he did it and he knows he did it." (R. 3:76). The prosecutor also stated that all of the evidence presented by the State showed that the petitioner committed murder and that therefore he should be convicted. (R. 3:76). This was not a comment on petitioner's failure to testify. Therefore, counsel was also not ineffective for failing to file a motion for mistrial base on this statement. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (holding that the failure to make meritless objections or motions does not constitute deficient performance).

The trial record reflects that defense counsel filed pretrial motions (C.R.:11-15, 38-43, 62-64); objected to the presentation of testimony and documentary evidence as well as statements made by the prosecution during closing statements (R. 2:115, 180; R. 3:71); cross-examined witnesses

13

extensively (R. 2:29-35, 38-9, 55-67, 88-98, 105-13, 127-32, 133-34, 166-75, 177-79, 184-86); and moved for a directed verdict. (R. 3:45). The record therefore does not support petitioner's contention that his trial counsel was ineffective in numerous respects. The state court's denial of this claim was therefore not contrary to federal law, and petitioner's second ground for relief should be denied.

## V. TRIAL COURT ERROR

In his third ground for relief, petitioner asserts that the trial court erred by admitting a prejudicial crime scene video into evidence at his trial. He claims that the video shows the body language of bystanders towards the deceased. (Pet. at 7). In his state writ, petitioner argued that the prejudicial value of the video outweighed its probative value, and it therefore violated Rule 403 of the Texas Rules of Evidence because it showed a "huge" crowd of family and onlookers viewing the body of the victim in grief. (S.H.Tr.:27).

The state court denied petitioner's claim that the video was entered into evidence in violation of state evidentiary rules. *Id.* at cover. Federal habeas proceedings do not afford review of a state court's interpretation of its own law. *Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). Instead, a petitioner is entitled to federal habeas relief due to trial error only if such error is not harmless within the meaning of *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), because "the error 'had substantial and injurious effect or influence in determining the . . . verdict.'" (citation omitted).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

14

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)). To be entitled to federal habeas relief due to a trial error, petitioner must show that the error actually prejudiced him. *Brecht*, 507 U.S. at 637.

Petitioner has not shown trial error, much less any prejudice from an error. The State filed a pretrial motion seeking to show the police squad car video to the jury without sound because there were statements made on the video by unknown persons identifying petitioner as the shooter and speculating that the victim was the shooter in a previous shooting for which no one had been charged. (C.R.:59-61). The record reflects that the State took steps to ensure that the video was not unduly prejudicial. While petitioner asserts that grief shown by bystanders in the video unduly prejudiced him, he has not shown that the trial court violated state evidentiary rules or that the probative value of the video in showing the crime scene immediately after the trial was substantially outweighed by the danger of unfair prejudice. Petitioner has also failed to establish that the admission of the video, if erroneous, had a substantial effect or influence on the verdict given the large amount of evidence supporting his conviction. The state habeas court's denial of this claim is therefore not contrary to federal law, and this ground for relief should be denied.

### VI. PROSECUTORIAL MISCONDUCT

Finally, in his fourth ground for relief, petitioner asserts that the prosecution committed misconduct during closing statements by allegedly injecting personal beliefs, providing a false motive for the killing, and commenting on petitioner's failure to testify. (Reply at 13-21).

Respondent asserts that this claim is procedurally barred because defense counsel did not object to most of the comments made by the prosecutor during closing statements. In general, federal courts may not review a state court decision that rests on an adequate and independent state

procedural default unless the habeas petitioner can establish either "cause" for the default and "prejudice attributable thereto" or demonstrates that the failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989). When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review. *See id.*; *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995). In this case, the state habeas court did not issue findings, and the denial of petitioner's state writ was a general denial without written order. The denial of this claim at the state court level was therefore not clearly and expressly based on a procedural bar for failure to object, and this claim is not procedurally barred.

As to the merits, "[p]rosecutorial misconduct implicates due process concerns." *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). Actions by a prosecutor may violate due process in two ways: "They may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation." *Id.* (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)). Federal courts apply "a two-step analysis to charges of prosecutorial misconduct." *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002). The courts first decide whether the prosecutor's actions were improper, and if so, they then determine whether the actions "prejudiced the defendant's substantive rights." *Id.*

When a petitioner asserts a generic due process violation, and it is determined that the prosecutor's actions were improper, the Court asks whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate standard of review for such allegations is "the narrow

16

one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *Donnelly* 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted).

Under Texas state law, proper jury argument includes: (1) summations of the evidence presented at trial; (2) reasonable deductions drawn from the evidence; (3) answers to opposing counsel's argument; and (4) pleas for law enforcement. *McFarland v. State*, 989 S.W.2d 749,751 (Tex. Crim. App. 1999). Here, the prosecutor's statements during closing were either summations of or reasonable deductions from the evidence, including the suggestion of a possible motive, or responsive to arguments made by defense counsel. They were therefore not inappropriate statements in violation of petitioner's due process rights. The state court's denial of this claim is not contrary to federal law, and this ground should be denied.

## VII. EVIDENTIARY HEARING

Based on the relevant filings and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VIII. RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED on this 21st day of November, 2012.**

                                                                       IRMA CARRILLO RAMIREZ
                                                                        UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                                                       IRMA CARRILLO RAMIREZ
                                                                        UNITED STATES MAGISTRATE JUDGE